

Jason J. Rawnsley
302-651-7550
Rawnsley@rlf.com

June 19, 2018

**VIA CM/ECF & HAND DELIVERY**
The Honorable Sherry R. Fallon
U.S. District Court, District of Delaware
844 N. King Street
Wilmington, DE 19801-3568

      Re:  *Universal Secure Registry LLC v. Apple Inc.*, C.A. No. 17-585-JFB-SRF

Dear Magistrate Judge Fallon:

Defendants Apple Inc. ("Apple") and Visa Inc. and Visa U.S.A. Inc. ("Visa") (collectively, "Defendants") submit this letter to address the disputes regarding the ESI Order and the Protective Order (attached as Ex. A). The disputes below (and in Plaintiff Universal Secure Registry LLC's ("USR") letter of today) are what remains after Defendants have compromised on many disputes to avoid burdening the Court. Indeed, Defendants' positions below include compromises that Defendants offered in a good faith effort to avoid burdening the Court with these issues as well.

**I.    ESI Order**

The parties dispute only one provision of the ESI Order: what files should be produced in native format.[1] In an effort to narrow the dispute, Defendants have agreed that financial spreadsheets will be produced as natives. If a document is not a financial spreadsheet and is difficult to review, Defendants will agree to any reasonable request to produce that particular document as a native. However, USR insists that unspecified "Excel (and other spreadsheet files)" and "other files that do not reasonably convert to TIFF image" be produced in native format. USR's proposal is vague and unworkable. Defendants expect that financial spreadsheets will be the majority (and perhaps the entirety) of the spreadsheets that they produce. Defendants are unaware of what files, other than video files, audio files, and certain spreadsheets, will "not reasonably convert to a TIFF image." USR's proposal may lead to unnecessary disputes regarding whether a particular file does "not reasonably convert" and therefore whether Defendants complied with the ESI Order.

To be clear, Defendants are not refusing to produce documents in native format that are actually difficult to review in TIFF. However, the files to be produced in native format should be clearly defined to avoid future disputes or confusion regarding the scope of the ESI Order. Defendants' proposal accomplishes this goal; USR's does not. Defendants respectfully request that the Court enter their version of the ESI Order with respect to native production of documents.

---

[1] The parties agree that video and audio files should be produced as natives.

II.		Protective Order: Expert Disclosure

Defendants have compromised to address USR's concerns regarding the initial expert disclosure requirements, and the parties have reached agreement regarding those requirements. The parties' remaining dispute centers on supplemental disclosure requirements.

Defendants will be producing extremely confidential information, including source code relating to the encryption algorithms used to protect the credit card information of millions of users.

In order to ensure that Defendants' extremely confidential information is protected, Defendants have negotiated robust expert disclosure requirements.[2] This includes identifying "past and current employment and consulting relationships"; "pending patent applications" for which the expert is a named inventor, has an ownership interest (subject to certain negotiated limitations Defendants agreed to at USR's request), or is otherwise involved with in certain specified manners; and "other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object." However, because an individual's employment, relationships, patent activities and professional activities may change, Defendants seek to require disclosure "within seven (7) days of any change with respect to the scope of the Person's involvement in the design, development, operation or patenting of systems and methods in the Field." Defendants' proposal ensures that if the individual's employment and patent-related or professional activities change such that Defendants would have objected if they knew that information at the time of disclosure, Defendants have the necessary information to later object.

Defendants' current proposal is a compromise from its original proposal, which required immediate notification and did not include the "scope" clarifying language. Counsel for USR objected that immediately providing notice was too burdensome and "any change with respect to the Person's involvement" was too vague, but there is authority for such a provision. *See, e.g.*, Ex. B, *Softview LLC v. Apple, Inc.*, No. 10-cv-389-LPS, at 21 (D. Del. May 10, 2011) (D.I. 67) (Agreed Protective Order) ("[T]he Party seeking to disclose Protected Material shall provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of devices in the Field."); *see also* Ex. C, *Evolved Wireless, LLC v. Apple Inc.*, No. 15-cv-542-SLR-SRF, at 29 (D. Del. Mar. 15, 2016) (D.I. 35) (Proposed Protective Order) ("[T]he Party seeking to disclose Protected Material shall immediately provide written notice of any material change with respect to the Person's involvement in the design, development, operation or patenting of [Field]…"). In an attempt to avoid burdening the Court, Defendants agreed to change "immediate" to seven days and clarified that the change should be in the Person's scope of involvement rather than "any change with respect to the Person's involvement."

USR's proposal is overly narrow and does not sufficiently protect Defendants. By limiting the disclosure to new employment relationships, USR excludes changes in patenting and professional activities the Person is involved with on behalf of him- or herself or as part of his or her current employment relationships. Yet that information is highly relevant to why an expert may be objectionable, which is why those requirements are part of the initial disclosure requirements.

---

[2] These same disclosure requirements apply to representatives of the parties who may see confidential information and to in-house counsel.

### III.     Protective Order: Electronic Copies/Images of Source Code

Defendants have compromised substantially with respect to source code. For example, at USR's request, Defendants have agreed to modify the log requirements, compromised on how objections to software tools are handled, agreed to provide a Notetaking Computer to facilitate review, agreed to increase the number of individuals who may view Defendants' code, agreed to increase the number of paper copies that may be made of Defendants' code, agreed to provide a source code machine at depositions, and agreed to allow counsel for USR to transport, subject to negotiated protections, Defendants' source code to depositions and Court. Where Defendants cannot compromise is with respect to electronic copies of source code.

Source code is among the most important and confidential information that Apple and Visa possess. *See Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) ("[I]t is well recognized among lower courts that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property."). If Defendants' source code were to be exposed, even inadvertently, Defendants would face potentially devastating competitive harm. *See id.* (advising caution regarding the "significant consequences that might result from unauthorized or inadvertent disclosure" of source code). But the risk here is not merely competitive, as in other cases involving source code: the particular source code at issue in this case relates to securely transmitting the public's credit card information. This source code is extremely sensitive, and the consequences to the millions of users of disclosure are potentially disastrous. This information regarding how Apple Pay works would be extremely valuable to competitors, hackers, and thieves looking to steal personal information. The confidentiality of Defendants' source code helps keep their products secure from hacking and the public's personal information secure from being stolen. Accordingly, any breach in security could result in grave and irreparable harm affecting not only Defendants but also millions of users and financial institutions, such as banks.

Electronic copies of source code pose the most significant risk of inadvertent disclosure because they are easily copied and transmitted. For this reason, the parties have negotiated robust protections for the source code review computer, including making it available at outside counsel's offices on computers with access ports disabled "to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection," and prohibiting recordable media (other than a special Notetaking Computer provided by the Producing Party), including cell phones and cameras, into the Source Code Review Room. *See also* Default Standard for Access to Source Code (setting forth restrictive measures for the production of source code and prohibiting printing or copying source code without agreement of the producing party or further order of the Court).

Nevertheless, Defendants recognize that there may be certain limited circumstances where it becomes necessary to present electronic copies of excerpts of source code to the Court. Under Defendants' proposal, if a party reasonably believes that it needs to submit source code as part of a court filing, the parties must meet and confer as to how to make such a filing while protecting the source code confidentiality. Because the Court is not normally required to make determinations based on its own review of source code, it is unlikely this procedure will be required

The Honorable Sherry R. Fallon
Page **4** of **7**

more than once or twice over the course of this litigation.

USR proposes that it be allowed to submit Defendants' source code to the Court under seal in filings without Defendants' prior knowledge.[3] USR's proposal necessarily involves making and transmitting an electronic copy of any source code that is submitted because this Court requires electronic filing of submissions. *See* D. Del. L.R. 5.1.3 ("Documents placed under seal must be filed in accordance with CM/ECF Procedures, unless otherwise ordered by the Court."); Revised Administrative Procedures Governing Filing and Service by Electronic Means, Section G(1) ("All sealed documents in civil cases must be filed electronically in CM/ECF."). Thus, any submitted source code would be transmitted over the public Internet and stored on the Court's servers. This could lead to disastrous results if the transmission is intercepted, or the Court's servers are compromised.[4] Moreover, an inadvertent public filing, or a confidential filing that inadvertently became public, could render Defendants' highly confidential and sensitive source code publicly available instantaneously. Once available publicly, this information cannot be removed from public knowledge. Even with well-conceived safeguards, electronically stored files can be copied, disseminated, hacked into (if on a networked computer), or altered, all without detection. As described above, any breach of security would result in grave and irreparable harm that could affect not only Defendants but millions of users.

To avoid such a catastrophic disclosure, Defendants simply propose that the parties meet and confer about a party's intention to file source code prior to filing the code in the rare event that such a filing is necessary. This proposal, which has been entered in other cases, would ensure that a party knows what parts of its source code are being electronically transmitted to and stored by the Court. *See, e.g.*, Ex. D, *Evolved Wireless*, No. 15-cv-542-SLR-SRF, at 56:8-22 (D. Del. Mar. 8, 2016) (Hearing Tr.) (adopting Defendants' proposal with respect to "attaching source code to court filings" in order to "follow … the overarching intent of why we have a default standard for access to source code and why we have protective orders in the first place"); Ex. C, *Evolved Wireless*, No. 15-cv-542-SLR-SRF, at 27 (D. Del. Mar. 15, 2016) (D.I. 35) (Proposed Protective Order) ("If a Party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such Source Code will not be filed absent agreement from the Producing Party that the confidentiality protections will be adequate, and this provision may be modified by further agreement by the Parties or the Court."); Ex. E, *Nokia Corp.*

---

[3] USR also seeks to create and include electronic images in expert reports and discovery documents. These present the same concerns regarding electronic transmittal and storage on networked computers. Moreover, given that USR agrees it will refer to production numbers rather than copies of source code in correspondence, USR should similarly be able to rely upon production numbers (or, if necessary, refer to specific function or variable names) for expert reports and discovery documents. To the extent it cannot, as with court filings, the parties can meet and confer to discuss the specific circumstances requiring an electronic copy of code.

[4] Defendants' concern is not hypothetical. U.S. federal court websites are already reportedly a target of those who would compromise users' security. *See* Ex. H ("Official websites across many countries, including the U.S., … were unwittingly drawn into a cryptocurrency-mining scheme that quietly hijacked the computers of people who visited those sites. The affected websites included those for the United States Courts . . . ."); Exs. I-J (same).

*v. Apple Inc.*, No. 09-cv-791-GMS, at 26 (D. Del. June 1, 2010) (D.I. 51) (Joint Proposed Protective Order) (same except does not expressly provide that provision may be modified by further agreement by the Parties or the Court). This proposal would also permit a party to confirm that any submission contains only those portions of the source code necessary for that particular submission and to propose alternative ways of providing source code for the Court's review. Accordingly, proactive communications between the parties should be required before digital copies are created and transmitted electronically. *See, e.g.*, *EPL Holdings, LLC v. Apple Inc.*, No. 12-cv-04306, 2013 WL 2181584, at *6 (N.D. Cal. May 20, 2013) ("Given the high risk associated with producing electronic copies of source code and then transferring those copies online, the Court concludes that Apple's restrictions are reasonable. The restrictions ensure that only those electronic copies that are absolutely necessary will be made and transferred."); *Unwired Planet LLC v. Apple Inc.*, No. 12-CV-505, 2013 WL 1501489, at *8 (D. Nev. Apr. 11, 2013) (good cause exists "to establish a mechanism for Apple to be given notice of the source code that Unwired intends to file with the court. Such a provision should also allow the parties to fashion alternatives to providing the court with source code, if the need arises. Therefore, the parties shall include Apple's version of Paragraph 11(c)(xii) consistent with this order.").

To the extent USR argues that "requiring it to seek [Defendants'] consent would cause its filings with the court to be unnecessarily delayed and the contents of those filings to be determined by [Defendants]," USR is incorrect. *EPL Holdings*, 2013 WL 2181584, at *7 ("The Court does not expect the process posed by Apple to cause a substantial delay in EPL's filings. … any harm in delay does not outweigh the risk posed by creating electronic copies of source code unnecessarily. Finally, if Apple declines to grant EPL's request to generate electronic copies of source code, EPL is not without recourse; EPL may bring the dispute to the court for resolution."). Defendants do not intend to interfere with how USR presents its case; their interest is in ensuring the security of their source code, including protecting the public's interest in the security of that source code. To the extent USR does not wish to seek Defendants' consent to file the code, in the rare situation that such a filing is actually necessary, USR may promptly bring the dispute to the Court for a decision.

### IV. Protective Order: Prosecution Bar

The parties agree that a prosecution bar is appropriate for Plaintiff's counsel,[5] but disagree whether it should (1) cover claim amendments in post grant and Covered Business Method ("CBM") review, (2) include an acquisition bar, and (3) also cover Defendants' counsel.

*First*, the prosecution bar should cover amending claims in post grant and CBM review so as to preclude Plaintiff's counsel having the benefit of their confidential knowledge of Defendants' products in those proceedings. *See, e.g.*, Ex. F, *TransVideo Elecs. Ltd. v. Hulu, LLC*, No. 13-cv-1399-LPS (D. Del. Jan. 22, 2015) (D.I. 41) (Oral Order) ("[T]he bar should apply to reexaminations etc. as Plaintiff could otherwise pursue narrowing amendments of claims with confidential knowledge as to the impact such amendment would have on its allegations of

---

[5] Plaintiff's counsel will receive access to detailed technical information and source code concerning Defendants' current products. Accordingly, a prosecution bar is appropriate as applied to Plaintiff's counsel to protect this current and highly confidential technical information belonging to Defendants, and the two-year bar is standard.

infringement"); *Edwards Lifescis. AG v. CoreValve, Inc.*, No. 08-cv-91-GMS, 2011 WL 10565589, at *1 (D. Del. Feb. 23, 2011) ("the risk of the use of confidential information and the harm that the defendants might suffer as a result far outweighs the potential harm to [Plaintiff] of enforcing the prosecution bar in the reexamination"). Moreover, "all parties agree that, given the current pervasive use of prosecution bars in patent litigation, one is appropriate here," therefore "determining the existence and extent of an exemption shifts the burden to the party seeking to have its counsel participate in post-grant proceedings at the PTO." *Inventor Holdings, LLC v. Wal-Mart Stores Inc.*, No. 13-cv-00096-GMS, 2014 WL 4370320, at *2 (D. Del. Aug. 27, 2014) (Lukoff, Special Master). Plaintiffs have not met that burden. Indeed, Defendants do not see how Plaintiff could meet that burden given that Plaintiff agrees the prosecution bar should cover preparation of claim amendments in *inter partes* review.

***Second***, an acquisition bar is appropriate here and consistent with "[t]he purpose of the prosecution bar[, which] is to mitigate the risk of inadvertent use of confidential information learned in litigation by barring litigation counsel's involvement in strategic decisionmaking related to the subject matter of the litigation." *EPL Holdings*, 2013 WL 2181584, at *4 ("The acquisition of patents implicates this concern since litigation counsel may consciously or subconsciously use their knowledge of Apple's confidential information to advise a client on which patents to acquire, that is, patents that may be asserted against Apple."). "Litigation counsel who have access to [Defendant's] critical source code and other highly confidential information should not be permitted to consult with their client strategically under circumstances where an inadvertent disclosure of what they have seen at the defendant's stand-alone computer could potentially be used to harm the defendant." *Inventor Holdings, LLC v. Google, Inc.*, No. 14-cv-186-GMS, 2014 WL 4369504, at *2 (D. Del. Aug. 27, 2014) (Lukoff, Special Master) (adopting two-year patent acquisition bar); *see also In re Trustees of Boston Univ. Patent Cases*, No. 12-cv-11935, 2013 WL 12324364, at *3 (D. Mass. Nov. 15, 2013) ("A patent acquisition bar may be appropriate to prevent trial counsel from inadvertently disclosing confidential information when advising on subsequent patent acquisitions. … The concerns justifying a patent acquisition bar for counsel also extend to trial experts and consultants.") (citations omitted). Moreover, an acquisition bar is not overly burdensome for Plaintiff because "the acquisition of additional patents is an exercise where the plaintiff can rely upon counsel other than any who have seen highly-protected materials." *Google*, 2014 WL 4369504, at *2.

***Third***, a one-way prosecution bar is appropriate. Plaintiff has not provided Defendants with any specific detail as to what current business USR is engaged in that will generate highly sensitive technical information. There is clearly a gross disparity between the sensitivity of Defendants' proprietary technical information and any proprietary technical information of Plaintiff that may be produced in this case. *See, e.g.*, Ex. F, *TransVideo*, 13-cv-1399-LPS (D. Del. Jan. 22, 2015) (D.I. 41) (Oral Order) (adopting one-way prosecution bar "as Plaintiff has failed to show that it will likely be required to produce the type of confidential information that will create a risk of inadvertent misuse to warrant a bar on Defendants' counsel"); Ex. G, *Intellectual Ventures II LLC v. AT&T Mobility LLC*, No. 14-cv-1229-LPS (D. Del. Dec. 16, 2014) (D.I. 38) (Oral Order) ("Plaintiffs request that a similar bar be imposed on Defendants counsel is NOT ADOPTED as Plaintiffs have failed to show that such a bar would be justified").

Defendants respectfully request that the Court enter their version of the protective order.

The Honorable Sherry R. Fallon
Page **7** of **7**

                                                          Respectfully,

                                                          */s/ Jason J. Rawnsley*

                                                          Jason J. Rawnsley (#5379)

cc:      Counsel of Record (via CM/ECF)