**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
———
(302) 658-9200
(302) 658-3989 FAX

**JEREMY A. TIGAN**
(302) 351-9106
jtigan@mnat.com

June 20, 2018

The Honorable Sherry R. Fallon                          *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:   *Universal Secure Registry LLC v. Apple Inc., Visa Inc. and Visa U.S.A., Inc.*,
            C.A. No. 17-585 (JFB) (SRF)

Dear Judge Fallon:

      Plaintiff Universal Secure Registry LLC ("USR") respectfully submits this letter in response to Defendants Apple Inc., Visa Inc. and Visa U.S.A., Inc.'s (collectively, "Defendants") opening letter brief regarding Protective Order and ESI disputes (D.I. 94).

      **I.   Spreadsheets Should Be Produced In Native Format Because They Do Not Reasonably Convert To TIFF images**

      USR has proposed that "Excel (and other spreadsheet) files, videos, audio files, and other files that do not reasonably convert to a TIFF image will be produced in native format." D.I. 95, Ex. C, Section 5f. USR's proposal is a standard provision supported by the Default Standard in this District. D.I. 95, Ex. S, ¶ 5d ("files that should be produced in native format are files not easily converted to image format" and identifying "Excel and Access files" as two examples of such files). Even where the Default ESI order is modified, parties include USR's proposed provision. Ex. 1, *ReefEdge Networks, LLC v. Aruba Networks, Inc. et al.*, Case No. 12-1042 (D. Del. September 6, 2013) (D.I. 39) at 4-5 (requiring "Excel (and other spreadsheet) files" and "files that do not reasonably convert to TIFF image" to be produced in native format). Defendants' attempt to characterize USR's provision as "vague and unworkable" has no merit.

      Defendants also fail to justify their request to narrow the standard provision in the Default Order. Defendants do not show that producing Excel and other spreadsheet files in native format would be burdensome. In fact, Defendants' provision would increase the burden on the parties and the Court by creating additional disputes over whether a file is "difficult to review in TIFF," and requiring files to be re-produced in native format. Moreover, Defendants' entire argument is premised on an unfounded assumption that Excel and other spreadsheet applications are commonly viewable in TIFF format. But, in truth, Excel and other spreadsheet programs are used to create spreadsheets that span many pages such that the columns and rows often do not fit in a TIFF image. They also often include formulae and features (e.g., pivot

The Honorable Sherry R. Fallon
June 20, 2018
Page 2

tables) that can only be viewed in native format. This is why the Default Standard requires native production.

## II. Defendants' Provision Regarding Expert Disclosures Is Vague And Unworkable

To avoid burdening the Court with disclosure requirements, USR agreed to Defendants' expert disclosure proposals except one. Specifically, USR cannot agree to Defendants' vague and ambiguous provision requiring notice throughout the pendency of this case of "any changes with respect to the scope of the Person's involvement in the design, development, operation or patenting of systems and method in the Field." D.I. 95, Ex. D, Section 12 vi.

In order for a Protective Order provision to be useful, those reading it must understand what it means and what it requires of them. Here, Defendants' provision provides no clear way of determining which events trigger the need to provide notice. In contrast, USR's proposal provides a bright line provision that can be applied in a meaningful way and protects Defendants' interests. D.I. 95, Ex. D, Section 12vi. USR should not have to guess what changes would require notice, and the Court should adopt USR's proposal.

## III. The Court Should Reject Defendants' Request For Absolute Veto Power Over USR's Use Of Source Code

USR's proposal provides Defendants' source code adequate protection. Under USR's proposal, USR is permitted to include "*excerpts* of Source Code where reasonably necessary" for expert reports and other court documents (e.g., summary judgment motions), but will not otherwise "create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code." D.I. 95, Ex. D, Section 11.c.xix, 11.c.xxi. Any documents containing excerpts of source code will be properly designated as "Confidential – Attorneys' Eyes Only Source Code," and, if filed with the Court, it will be filed under seal. *Id.*

Defendants fail to explain why USR's protections are insufficient. This District has Local Rules and procedures for filing documents under seal. D. Del. L.R. 5.1.3. Parties of all types and sizes (including security companies) use these rules to file highly sensitive information, including source code. *See, e.g.,* Ex. 2, *ReefEdge Networks, LLC v. Aruba Networks, Inc. et al.*, Case No. 12-1042-LPS (D. Del. August 29, 2013) (D.I. 35) at 15, 19 (network security companies agreeing their source code "shall be lodged under seal" pursuant to "Rule 5.1.3" and that code may be "copied into electronic format" for "expert report or court filing"); Ex. 3, *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, Case No. 11-cv-01258-SLR (D. Del. May 10, 2012) (D.I. 43) at 9 (firewall security companies allowing electronic images "necessary to prepare court filings" and "expert's expert report"). Both Defendants have also agreed that filing their code under seal provides sufficient protections. D.I. 95, Ex. K at 7 (Visa agreeing "electronic copies" of code may be made for Court filings in a case involving financial transactions using Visa's Bill Pay and Check Out service); *id.*, Ex. K at 23 (Apple agreeing that its source code may be filed under seal). Defendants' claim that Court servers may be hacked is speculative, and its arguments about inadvertent disclosure do not justify its proposal, where, as here, filings are performed by Delaware counsel that routinely file code under seal without incident.

Defendants' assertion that it "simply propose[s] that the parties meet and confer" before filing source code is baseless. D.I. 94 at 4. ***Defendants' proposal provides them absolute veto***

The Honorable Sherry R. Fallon
June 20, 2018
Page 3

*power over USR's use of source code*.  If Defendants' proposal is adopted, USR would **not** be allowed to include "excerpts" of source code in its expert reports unless Defendants allowed USR to do so.  D.I. 95, Ex. D, Section 11.c.xxi ("<u>Defendant's Position</u>: … absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code…").  Similarly, USR would not be allowed to file any documents that include excerpts of source code (e.g., summary judgment motions) with the Court, unless Defendants allowed USR to do so.  Ex. D, Section 11.c.xx ("Source Code will not be filed absent agreement from the Producing Party").  Not even the Protective Orders cited by Defendants in their opening letter brief support this type of restriction.  For example, the Protective Order in the *Evolved Wireless* case allowed electronic copies of code to be created for pleadings and documents filed under seal.  *Compare* D.I. 94, Ex. C at 24 ("Hard copies of the Source Code may not be converted into an electronic document, except as necessary for expert report and pleadings filed under seal."), 26 ("Except as necessary for expert reports and pleadings under seal, absent express written permission from the Producing Party, the Receiving Party may not create electronic images…") *with* Ex. D, Section 11.xix and 11.xxi (Defendants objecting to any use of source code in expert reports and pleadings).

Defendants' assertion that USR's proposal allows USR to file Defendants' source code "without Defendants' prior knowledge" is also incorrect.  D.I. 94 at 4.  In order to address Defendants' security concerns, USR has agreed to provisions under which Defendants review the source code prior to it even being produced to USR.  Ex. D, Section 11.c.viii ("At the end of the review session each day, the printed pages shall be collected by the Producing Party.  The Producing Party shall Bates number, copy and label" pages and produce within four days).  In other words, ***Defendants will have knowledge of every line and page of source code that leaves their facilities***.  If Defendants believe that a particular portion of code should not be filed, they will have ample time to raise the issue with USR well in advance of any potential filing.  In this way, Defendants code is protected, and USR is able to effectively prepare it case.

Adopting Defendants' provision would be highly prejudicial to USR.  Indeed, it would prevent USR from using source code at important junctures in the case.  For example, if Defendants were to file for summary judgment of non-infringement or a motion to strike USR's infringement expert opinions, USR may need to provide excerpts of source code in its responsive filings.  Because USR would have limited time to prepare its response, USR would likely be unable to raise disputes with the Court in time to have them resolved before the filing deadline and would be able to file only the code Defendants allow (if any).[1]  Also, USR would not know

---

[1] Defendants' conduct to date already suggests it may use this provision for tactical purposes.  For example, the protective order provides Defendants 10 days to object to an expert after disclosure materials are provided (CV, past case, etc.).  D.I. 94, Ex. D, Section 12(a)(i)-(vi).  On June 13, 2018, USR disclosed a code consultant, Jay Bhatia, by providing the agreed disclosure materials.  USR informed Defendants it would not be sharing confidential materials with Mr. Bhatia until the Protective Order was entered, and simply wanted to get Mr. Bhatia cleared.  Defendants refused to clear Mr. Bhatia, taking the position that the objection window can only begin after the Protective Order is entered—even though the Protective Order disputes did not impact the disclosure.  To date, Defendants have not confirmed Mr. Bhatia or agreed that the 10-day objection period begins prior to entry of the Protective Order.

what code it can use and describe in briefs until Defendants approve USR's request, further impeding USR's ability to prepare an effective brief.

Finally, Defendants' assertion that these extreme restrictions are needed because the source code at issue in this case relates to financial transaction information should be rejected for several reasons. D.I. 94 at 2. **First,** Defendants' provisions are not narrowly tailored to this source code. Indeed, USR has repeatedly asked Defendants to identify the source code they contend presents a heightened security risk and "relates to encryption and storage of cryptographic information." D.I. 95, Ex. R at 1 ("we have repeatedly asked you… what source code is covered by the phrase 'relates to encryption and storage of cryptographic information.' To date, we have yet to receive a response"). Defendants have refused or been unwilling to provide this information. **Second**, as just explained, no source code will leave the review room without Defendants' permission. D.I. 95, Ex. D, Section 11.c.viii. Thus, if Defendants believe a particular portion of code deserves heightened protection, it can raise the issue well in advance of any filing. **Third**, Defendants have allowed source code to be filed under seal and included in expert reports and other court documents in cases involving similar financial products and transactions. *See, e.g.,* D.I. 95, Ex. K at 7.

### IV. There Is No Basis for an Acquisition Bar or Unilateral Prosecution Bar

With respect to the prosecution and acquisition bar in the Protective Order, there are only two real disputes, although Defendants purport to identify three. The first argument—that the prosecution bar should extend to the amendment of claims in CBM and other post-grant review proceedings—is a straw man. In an effort to reduce the number of disputes before the Court, USR proposed a compromise that would allow its litigation team to participate in the *inter partes* review proceedings Defendants have sought to institute against the asserted patents so long as they did not participate in the amendment of claims. Defendants did not ask to extend this compromise to other post-grant review proceedings. Had they, USR would have agreed. USR does not oppose a prosecution bar that prohibits party representatives who receive Attorneys' Eyes Only or source code information from participating in claim amendments in CBM and post-grant review proceedings.

With respect to the two issues that are actually in dispute:

Acquisition Bar. There is no basis for the imposition of an acquisition bar in this case. The agreed-upon provisions of the protective order already provide that "Protected Material . . . shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever." Section 1.A. Courts in this district have repeatedly held that acquisition bars—which would prevent party representatives exposed to any Attorneys' Eyes Only or source code information from advising clients on acquisition activities in the field, regardless of whether that information has any potential bearing on their advice—as unduly anticompetitive. *See* USR's Opening Ltr. Br. at 2 (citing cases). By precluding USR's outside counsel from participating in "the acquisition of patents (including patent applications) . . . relating to the Field" for any client, Defendants' proposed acquisition bar would, for example, prohibit USR's outside counsel from advising USR or other clients regarding validity issues relating to potential patent acquisitions. Defendants' argument that an acquisition bar is "not burdensome for Plaintiff" because Plaintiff can retain other counsel to advise it on patent acquisition misses the point because it fails to address the restrictions it places on litigation

The Honorable Sherry R. Fallon
June 20, 2018
Page 5

counsel's practice. There is no reason for such a broad prohibition or limitation on USR's outside counsel's ability to advise clients on patent issues in the field.

Defendants' cited authorities are outdated, out-of-district, not-controlling, and/or readily distinguished and do not support an acquisition bar in this case. For example, in the out-of-district *EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306 JST JSC, 2013 WL 2181584 (N.D. Cal. May 20, 2013), the district court acknowledged that they type of acquisition bar Defendants seek here (i) is not a standard term in the Northern District of California's model protective order; (ii) prohibits activity that poses little danger to the producing party's information, such as the rendering of advice on issues such as validity; and (iii) is concerned with counsel being vigilant not to provide business judgment while dispensing legal advice, which is already expected by protective orders "as a basic principle." *Id.* at *4-5. As a result, the court in *EPL Holdings* allowed only a much narrower acquisition bar than the one proposed by Defendants here. *Id.* at *5 (ordering "a limited patent acquisition bar that prohibits counsel from advising clients as to which patents to acquire to the extent such patents are narrowly related to subject matter of this litigation, but allows counsel to advise on legal matters involving such patents, including validity" and excluding "settlement negotiations of litigations"—which often include the disposition of patents—from the scope of the bar). *In re Trustees of Boston University Patent Cases*, No. CV 12-11935-PBS, 2013 WL 12324364 (D. Mass. Nov. 15, 2013), another out-of-district case cited by Defendants, relied on *EPL Holdings* and cases from the Districts of Nevada and Puerto Rico and did not even begin to address the extensive authority in this District rejecting acquisition bars. *Id.* at *3.

Finally, *Inventor Holdings, LLC v. Google, Inc.*, C.A. No. 1:14-CV-00186 (GMS), 2014 WL 4369504 (D. Del. Aug. 27, 2014) (Lukoff, Special Master)—although at least from this District—is unpersuasive. In that case, Special Master Lukoff entered an acquisition bar in substantial reliance on Chief Judge Stark's decision in *Intellectual Ventures I, LLC v. Altera Corp.*, C.A. No. 10-1065-LPS (D. Del. Aug. 1, 2012), a decision Judge Stark subsequently rejected. *See* Ex. 4, *Intellectual Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 12-193-LPS (June 5, 2014 Tr. at 48-49) ("I was reminded, of course, what I had done in the IV versus Alterra case [*i.e.*, entered an acquisition bar], and all I can there is my recollection is in that earlier case it wasn't – it really wasn't the focus of what was in dispute, in my mind at least in that case. And I've had occasion in this case to think it through much more carefully, and I think I have reached the right decision in this case."). Defendants have identified no basis for departing from the rule against anticompetitive acquisition bars that Judge Stark—and the other judges in this district— have almost uniformly adopted and applied.

The One-Way Prosecution Bar. Defendants' claim that a one-way prosecution bar is appropriate because "[t]here is clearly a gross disparity between the sensitivity of Defendants' proprietary technical information and any proprietary technical information of Plaintiff that may be produced in this case" is unsupported and dismissive of USR's innovations and technology.[2]

---

[2] Notably, this claim is also copied essentially *verbatim* from a brief by Apple's counsel's firm in *TransVideo Electronics, Ltd. v. Hulu, Inc.*, C.A. No. 13-1399-LPS, cited by Defendants, suggesting Defendants would make this argument no matter the specific facts of this case and no matter what technology USR or USR ID offered. *Compare id.*, D.I. No. 38 (". . . Plaintiff has not provided Defendants with any specifics as to what current business TVE is engaged in that generated highly sensitive technical information.

The Honorable Sherry R. Fallon
June 20, 2018
Page 6

As noted in USR's Opening Letter Brief, USR's sister company USR ID recently released Leash™, which allows users to lock and unlock their computers (including Macs) through their mobile phones based on proximity using USR's patented three-factor authentication. Apple (at least) should be very interested in such technology. Moreover, Defendants have issued numerous discovery requests targeted at USR's and USR ID's products, and Defendants' letter brief conspicuously does not disavow any interest in USR's or USR ID's technical product information or source code for its products. The two cases cited by Defendants in support of a one-way prosecution bar are distinguishable. *Intellectual Ventures II LLC v. AT&T Mobility LLC*, No. 14-cv-1229-LPS (D. Del. Dec. 16, 2014) (D.I. 38) (Oral Order) involved a well-known non-practicing entity as the plaintiff, and the plaintiff in that case made no substantive argument that a prosecution bar was needed to protect its sensitive information—only that a prosecution bar should not be "discriminatorily applied" to the plaintiff. *See id.* (citing briefs at C.A. No. 13-1668 D.I. 74-77); *id.*, C.A. No. 13-cv-1668, D.I. 74 at 3. And in *TransVideo Electronics, Ltd. v. Hulu, Inc.*, C.A. No. 13-1399-LPS, the asserted patents were filed twenty years before and were expired, such that the plaintiff's current business operations were of little relevance to the case. *See id.*, D.I. 38 at 2. In sharp contrast, Defendants in this case are serving discovery targeting technology released *this year*. In this case, Defendants want access to USR's sensitive technical information and source code and there is not basis for entering a unilateral prosecution bar that excuses Defendants' counsel from its protections.

                                                Respectfully,

                                                */s/ Jeremy A. Tigan*

                                                Jeremy A. Tigan (#5239)

JAT/dlw
Enclosures
cc:     All Counsel of Record (Via Electronic Mail; w/ encl.)

---

        [T]here is clearly a gross disparity between the sensitivity of Defendants' proprietary technical information and any proprietary technical information of Plaintiff.") *with* Defendants' Opening Ltr. Br. at 6 ("Plaintiff has not provided Defendants with any specific detail as to what current business USR is engaged in that will generate highly sensitive technical information. There is clearly a gross disparity between the sensitivity of Defendants' proprietary technical information and any proprietary technical information of Plaintiff that may be produced in this case.").